We'll go ahead and move on to argument in our second case set for today which is United States v. Rivera, case number 24-673 and we'll hear first from Mr. Fish. Good morning your honors and may it please the court Eric Fish appearing for Mr. Rivera the appellant. I'd like to reserve five minutes of my time for rebuttal. So I'd like to begin with the sentencing issues in this case and in particular the drug approximation issue. This case is squarely controlled by United States v. Gonzalez-Sanchez and the factual similarities are remarkable. In Gonzalez-Sanchez the defendant flushed an amount of drugs down the toilet and in Gonzalez-Sanchez the judge used money found in the residence to determine the amount of drugs that were missing to approximate the amount of drugs. And in that case the the finding was reversed and this court instructed that in order to conclude that a certain amount of drugs were at the premises based on an amount of money one needs a finding based on the record made by a preponderance of the evidence that the currency seized was the proceeds of a drug transaction. Without that conversion into cash is improper. So was there a jury, a special jury verdict in Gonzalez-Sanchez that found the amount of drugs? That was not there was no special jury verdict discussed in the opinion your honor. There is a special jury verdict here I can distinguish. Well and that's yeah that's what I guess that's what I'm sort of leaning into is that seems a pretty easy distinction in this case where you have a jury that actually found a specific amount. So why isn't that enough? Well so the the jury verdict does not have estoppel consequences in this case for two principal reasons. First the jury was instructed that they could find the the money forfeitable either because it was the proceeds directly or indirectly of the drug dealing or because it was being used in it was intended to be used in the future for the drug dealing. That that latter basis which was available to the jury based on its instructions would not support the drug approximation analysis. In addition the the jury's instructions said it could find it was either direct or indirect the the connection between the money and the drugs. If the connection is indirect that is through some other item being sold or some other you know feature of of Mr. Rivera's conduct that's connected to but not itself selling methamphetamine that would also not support the drug approximation. So for both of those reasons the jury verdict is distinguishable. The judge also did not rely in sentencing on this case on the jury's special forfeiture verdict. The only factor the judge discusses in in opposing the sentence is the the money that was found and so we don't think that the forfeiture verdict supports the enhancements. In addition the judge needed to sort of specify the amount of money specify this particular source of the money and go through an analysis of you know on the record by a preponderance of the evidence of how that money supports the conclusion with indicia that the money was from drug transactions that a certain amount of methamphetamine was present. Cases cited in Gonzalez-Sanchez that satisfy this condition have much higher sort of thresholds of evidence than was present here. So for example in Stevenson members of the defendant's drug distribution ring habitually arranged their proceeds in a particular and readily identifiable manner. We don't have that here. We don't have evidence of how you know money from drug transactions were arranged. Also in United States v Hicks the have any sort of admission here. So for that reason I believe the drug approximation enhancement should be reversed. I can move now to the premises enhancement. So the purpose of the premises or stash house enhancement is not to to impose higher sentences on people who sell drugs and also live in a residence. The purpose is to target the particular harms that come from residences or buildings that are specifically for the purposes of either manufacturing or distributing drugs. And here you know this was Mr. Rivera's home. We have there's lots of evidence. I encourage this court to look at the photographs in the excerpts of record. You know it is furnished. There are decorations on the walls. There's a television. There's a foosball table. There's an arcade game. You know there's beds. There's a full dining room. This was Mr. Rivera and two other people's primary residence. And the mere fact of the presence of drugs doesn't make it a stash house. So the jury sorry the guidelines specifically is concerned with manufacturing and distributing. There is zero evidence. But in this case there's a lot of evidence of what this man and his girlfriend were doing. Doesn't that convert it to a stash house? I'm sorry what they were doing? Putting money putting things down the toilet and all that sort of thing. You're right. So the presence of drugs in the house is sort of one piece of evidence. Right. The jury instruction the notes in the jury I'm sorry the notes in the guideline instruct this court and the sentencing court to look at the uses the lawful uses of the house in this case living there you know sleeping there every night having meals there presumably and compare those to the unlawful uses of the presence which in this case involves storing some amount of methamphetamine in sort of a side table or a safe near the bed. There's no evidence of manufacture. There's no laboratory equipment. There's no there's very little evidence of any sort of regular. Forgive me I may be wrong but I thought there was a scale that had residue on it. Am I mistaken? There was a scale by manufacturer I mean producing the actual methamphetamine. So the guideline just the guideline mentions manufacturing and distributing distributing methamphetamine. There's little to no evidence that. So is your position this guideline can only apply if they were actually manufacturing the mess? Or distributing. Or distributing. Okay so I mean the scale the problem is some of your arguments were aimed at manufacturing but the scale as Judge Smith pointed to that that you why wouldn't that support distributing? So the question is whether meth distribution was a primary purpose of the residence. The the mere presence of a of a scale and some amount of methamphetamine isn't enough to support the idea that this was essentially a stash house. That is a place that the for which well I I wonder if you're overstaying. I mean I guess it's hard to know. We haven't we haven't really addressed this in a published case. The closest case I could find was the Johnson case from the Sixth Circuit. And do you think I mean if Johnson were the law in the Ninth Circuit how would you distinguish it? So I think Johnson is distinguishable for several reasons. First dealing from the home was proven in Johnson. That is there was evidence of actual drug transactions occurring in the home. We have little evidence of that here. There's some speculation based on one of the text messages maybe 15 months ago but that text message also references going to a Burger King. There's in Johnson there was a separate storage room. Does does the in your view does the the enhancement require the drugs to be exchanged at the home or would it be enough to store the drugs there you know weigh them out you know conduct the business there and then to the Burger King and exchange it? Well so the enhancement is concerned with distribution. So the question is what does distribution mean? If the primary purpose of the residence is distribution I think that that at least interpretively that seems to imply that the distribution is happening at the residence. And the enhancement is based on a statute. It is based on a statute passed by Congress that was particularly oriented towards the unique dangers of you know semi-vacant buildings or vacant buildings that people go to to purchase drugs and how those lead to crime those lead to lots of people hanging out in in and using drugs in that place or nearby. There's violence like sort of the concern was abandoned or semi-abandoned buildings that exist for the purposes of either of either making drugs or selling them and is are known as a place where people go to to buy drugs and that's just not present here. The purpose of the enhancement was not to add additional sentences sentencing time to people who live in a residence and are also drug dealers. The problem the enhancement is oriented to is stash houses. Well but Johnson didn't seem to take that same interpretation. I mean as I read Johnson it said that yes it's true incidental storage would not be enough but it equated incidental storage with casual use. Meaning you know if I mean if you're just bringing in your own personal use that's not going to be enough to show distribution but that you know the question is do we have more than that here? Well so the other distinctions between this case and Johnson. In Johnson there was a it was marijuana and there was a separate room in the residence just for the purposes of storing marijuana. Here we have you know these ziploc bags that contained methamphetamine in the bedroom. That is one sort of a sort of like a chest next to the bed and so that's the sort of that's another distinction in Johnson. There's this separate sort of facility or room within the apartment the purpose of which is the storage of significant quantities of marijuana. There's also significantly more cash found in Johnson. Fifteen thousand dollars are present so I think it could be distinguished on on the facts there and and sort of the sort of the key you know analysis is looking at the factors that make it a stash house and looking at the factors that make it a residence and here there are there's quite a bit on this side of the scale of it being a residence. That is they they live there they get their their like bills sent there. There's all the all the sort of photographs of a lived-in residence that are that are present in the excerpts of record. I'd like to move on to the second amendment issue if I may. Yeah I can say we can dispose of that rather quickly with Duarte and Bonsway can't we not? So Duarte and Bonsway concern the possession of firearms. The distinction we're making is that here Mr. Rivera is being prosecuted for the possession of ammunition without any sort of charge involving firearms. All right so you're saying this is a 923g1 issue? Right so yes so this is uh distinguishable from Vonkstein Duarte because there's no you know Bruin instructs us to when looking at any particular firearm regulation to ask if there is a tradition of regulating that particular kind of firearm and as we argue in our brief such a tradition is absent in the United States. The second amendment clearly covers and the only laws from sort of the the founding period that the government is able to point to that regulates ammunition alone or that would apply to ammunition alone are sort of you know discriminatory and invidious in a way that this court's recent decision in the open carry case suggests should be disregarded. So whether you're right or wrong on that I think we've got a bigger problem as I understand it you didn't this wasn't raised in any pre-trial order. That's true so we argue that this is a jurisdictional issue that is that the facial unconstitutionality of this kind of prosecution can be raised on appeal for the first time because it goes to the court's jurisdiction over the case and we have cases showing that and so that's the basis on which we argue that this court can reach the second amendment issue. I see so you not a sort of not facial application but you're just saying hey we got to invalidate that we got to invalidate the law. So invalidating the prosecution of ammunition alone yes that's right your honor. Okay so and then I'd like to move if I may to the expert witness issue. So the in this case agent Neering who was the main trial witness and the source of the overwhelming majority of the government's evidence was permitted to testify essentially indistinguishably as both an expert witness and a fact witness describing what actually happened. Well okay so I mean you said indistinguishably I think that I don't think we should gloss over it because that seems to be where the case seems to rest on because I have a little bit different take perhaps on that and I'd like you to address it. The district court did say like look you you're gonna you're gonna testify as a fact witness first and then he brought him back later as an expert witness you don't disagree with that. That's correct your honor the district court said that and the district court instructed the jury that was happening. The problem is that that did not happen right so the during the fact testimony there were certain positions now those okay so and those were all objected to correct. So the the discussion of so agent Neering's use of his expert testimony to testify about how much methamphetamine is normally in a Ziploc bag that was objective too and the defense council also objected sort of at the outset of the trial that the expert testimony needed to be bifurcated from the fact testimony and sought you know the judge right okay to enforce that. But so what maybe you can walk through because I identified basically three examples that your argument seems to you three examples of what you say are expert testimony that was shoehorned into the the witness testimony category. He started testifying about trash appearing appeared to have been full of there appeared to be enough what what was this issue that the trash appeared to have been full of trash before. Yeah yeah right so basically the the three harms we allege that that caused to affect the verdict are first that agent Neering was able to testify based on his expertise about how much methamphetamine is normally in a Ziploc bag which was the key issue in this trial because the defense lawyer's closing argument was this was a personal use amount. And you objected to that? Yes that was. But then didn't you agree to a dual role instruction? So the defense council objected the judge then gave a dual role instruction the defense council did not like withdraw the objection at that point. The defense council agreed to the instruction being given but the instruction did not cure the error the instruction merely said uh agent Neering is testifying now as a fact witness if anything that compounds the error because the jury is being told these are facts you are hearing the the uh the instruction did not tell the jury to sort of dismiss that right not to treat opinion evidence as fact evidence or to not give the agent's testimony more weight based on their expertise in addition now that with the second one there was a you know an instruction given to disregard the testimony about the toilet bowl residue dissolving that's right so how does that i mean are you still relying on that sorry the residue the residue in the toilet pole was that was another point in which an objection was made that's right exactly and and then didn't the judge actually tell the jury to disregard that testimony that's right so that that well so we're not relying on that as error so the other uh so beyond that the sort of general you know the the fact that agent Neering was certified as an expert in all of his like dozens about hundreds and hundreds of different cases and different you know methods of investigation were testified about before his initial fact testimony that unfairly bolstered his fact which is another source of error and then third uh the you know the the um basically agent Neering testified about confidential informants and and what confidential informants normally do and the fact that he'd worked with confidential informants like a hundred times or so and the the just sort of went into some detail during this the sort of expert qualifications phase of the fact testimony about how he works with uh confidential informants including saying that that after he he speaks with a confidential informant he will go and have someone search the trash of the potential investigation target shortly after that the agent Neering testified that in this case he sent someone to go find the trash of Mr. Rivera and go through it to find evidence this you know strongly suggests to the jury that there is a confidential informant in this case there's no other potential relevance to discussing how confidential informants normally work or how often they're used and so this potentially uh this is another source of harm potentially allows hearsay to come in that is because no test no informant testified uh the concern which is also discussed in in the cases we cite is that the jury might rely on that and that sort of implication to conclude that there's a confidential informant who fingered Mr. Rivera okay do you want to reserve for a rebuttal yes thank you thank you good morning your honors may it please the court david spencer for the united states i'd like to begin with the drug quantity issue and just uh correct a couple factual assertions that were made in both the reply brief and then again this morning um the first was that um my seized from the house the $5,972 was facilitating property not proceeds the problem with that argument is that uh the jury returned a special verdict and the special verdict form specifically found that the seized currency was proceeds the jury found that the $5,972 is property constituting or derived from proceeds obtained directly or indirectly as a result of the offense charged in count one of the indictments so the argument seems to be that directly or indirectly is what makes that problematic to impute can you address that yes your honor either way whether it's direct or indirect the cash is still methamphetamine proceeds um factually it makes a lot more sense that the cash is going to be direct proceeds from a methamphetamine transaction i don't know how cash becomes indirect proceeds unless you're going and changing out bills and regardless it's methamphetamine proceeds and it's $5,972 the district court could take that finding which satisfies gonzalez-sanchez as well as all the other evidence we can get to and he can use the take the cash uh and convert it to its drug equivalent as this court has approved as a methodology and gonzalez-sanchez um that leads to several pounds of methamphetamine the court then very carefully and and scrupulously followed this court's case law that uh where there where you're approximating you have to give every break essentially to the defendant be as conservative as possible the court said i'm probably being excessively conservative but i'm going to find that there's at least 500 grams between 500 grams and 1.5 kilograms which is more than supported by the seized cash that the jury found was proceed was proceeds it's also more than supported by the approximately five thousand dollars in separate cash that was photographed on the phone a couple weeks before where the court again made a specific finding that that was proceeds because he referred to how it was packaged and bundled and said that in his mind that was a more than reasonable basis to find that that money as well was uh was drug proceeds one other factual issue i want to mention is uh councils argued that the district court didn't consider the jury's at all that's not correct at er 32 uh as we were discussing this issue at sentencing that the district court asked me to go through the facts relating to the cash and in doing that i separated the two categories explained that the cash at the house was not bundled but the cash in the photograph was and then i said but the cash that was seized from the house the jury found that that was proceeds and the district court said well there is that and so that that was part of uh the district court's basis for his finding when he finds the drug doesn't matter i mean would it be error if he didn't rely on that i don't think it would be error if he didn't uh no the short answer is no your honor i think the evidence would still be in the in there but i mean does it matter that i don't know maybe it does that the district court specifically found i it just would seem odd that we would remand it if we found evidence in there to say hey make sure you point to it i agree your honor i think on an abusive discretion standard this court uh affirms unless the district court's finding was illogical implausible or without support in inferences from the facts in the record um the appellant has not met that standard but here we actually do have the specific finding which was something that the court looked to in gonzalez-sanchez and we actually have two findings we have the specific finding by the jury that was referenced at sentencing as to the cash from the house and then we have the court's other cash pictured on the cell phone can you uh address the premises enhancement um because we don't we don't really have case law in the ninth circuit on this um is that i mean is it a problem i mean do we does this come up a lot or the district court's grappling with this um it does come up from time to time it's certainly not true that it's applied in every case in which a defendant has drugs at his home um this case is very different because as the as the paragraph 33 the trial evidence showed that the house was essentially the base of operations for this drug trafficking uh operation for a period of 15 months or so there was ample evidence to sustain that um it it's in the form of drugs at the house but also as as uh judge smith mentioned you have the scale that's found there the scale has methamphetamine residue on it showing it's been used in the past to weigh methamphetamine um it's an 800 gram scale which there was extra expert testimony that that's significant because uh smaller users or people dealing in smaller than pound quantities often have uh smaller scales that weigh lesser amounts and so that's consistent with a pound level dealer you have packaging materials um and a good deal of packaging materials in a separate room and again the size of the bags there was expert testimony that that's consistent with pound level dealers these aren't the little sandwich bags that might be tied off on the corner to package small amounts um you have the text messages which showed drug transactions happening um in the period leading up to the search uh there's some where he invites people to come to his home suggesting there's drug dealing at the home um there's others where he says i'll come out to you or it's implies so does it doesn't matter that uh do you think that this enhancement requires them to exchange the drugs at the home i don't think it does your couple reasons the commentary says that storage for the purpose of distribution um satisfies the or can satisfy the maintaining of premises the text of the guideline too i mean for the purpose of distribution can fairly encompass storage to then distribute the drugs not just the distribution happening right at the home um uh so i think the commentary is that is is really dispositive um and the plain language well the commentary the commentary isn't pat is not passed by congress right that's true your honor okay um so is that is that binding on us i mean i i think your point would be looking at the textual looking at the text it it supports this application here that's correct your honor i think the text is enough but i think the commentary is um a fair gloss on the text that um this court could reach just as easily as the sentencing commission um what about the second um oh well actually before we johnson um do you have a problem with the analysis in the second in the sixth circuit case or do you think you got it right um i i think that court did get it right and that's actually the opinion on which the district judge relied when he applied this enhancement um and uh he he rejected the argument as other courts have that it's dispositive that this is the defendant's home it's not um as as johnson found if it's if it's smaller amounts if it's personal use amount somebody has their drugs at home sure that's not going to be maintaining a present or a premises for drug distribution but when here when you have months of activity and it's the base of operations for this drug trafficking operation um that in in johnson and in this case rises to the level of maintaining a premises i think it's also important um uh my colleague argues that the purpose of the residence has to be drug trafficking that's not um what the guideline says or what the commentary says it just needs to be a purpose um sure it was a residence he was living there but it was also central to and necessary to his uh extensive and long-running drug trafficking operation and um for all those reasons the district court did not abuse its discretion in applying the enhancement uh following johnson what about the second amendment i mean is is that just not is that not preserved or um do you think we need to address it on the merits i don't your honor i think it's actually more than not preserved i think it's waived under uh rule 12 in this court's decision in brewster uh there was no argument that there's good cause here for not raising it below in a rule 12 motion uh my counsel on the other side says well it's it's jurisdictional because you can adjudicate it on the face of the indictment that's not correct for a couple reasons but most importantly um it's not uncommon that you would have a case where someone is charged under 18 usc 922 g1 with being a felon in possession of ammunition without an allegation that there's a when factually there is a firearm involved um the fact pattern in which that comes up most commonly is um in in terms of ghost guns or guns that are privately manufactured unserialized firearms because you don't want to get into the debate about whether that's a a gun or not well it's a little different reason you're on it can be very difficult to show the interstate nexus element if it's privately manufactured unserialized you can't prove that it was manufactured in another state or in another country and therefore must have moved in commerce to california those facts are often unknowable and so therefore it can often be very difficult to prove that the firearm traveled in interstate commerce but the ammunition can be charged and there's examples many examples of indictments that charge just the ammunition we don't have ghost ammunition yet i'm sorry we don't have ghost ammunition yet not usually at least usually the ammunition is manufactured in another state um and even in this case your honors um the ammunition was charged because that's what was found during the residence but factually there was evidence that there was a firearm there were statements from the confidential source that he that the confidential source had seen mr rivera with a pistol at his residence where he was distributing drugs we didn't put that evidence on at trial because it wasn't necessary but had there been a rule 12 challenge to the indictment saying that there has to be a firearm under the second amendment and had the district court said that we might have so even in this case uh there's there's a good reason it's waived because we didn't have an opportunity to to litigate the case that way even if it's not waived it's certainly plain air review and it it can't be plain under um as one of your honors mentioned this court's decisions in duarte and and vong shih um do you want to address the uh precipient uh and uh precipient for the expert testimony from nearing yes your honor um the court throughout the trial very carefully followed this court's uh guidance about how to handle dual role testimony from the holguin case um from other cases um at the outset of trial uh government council i told the court that we were planning to present agent nearing as both a fact and an expert witness and um in in our pre-trial briefing advised the court of holguin and asked the court to follow those safeguards which the court did specifically the parties hadn't agreed upon jury instruction that was this court's model instruction um and we agreed that would be read both uh during trial at the point of testimony and then in the final closing jury instructions that's what the court did we also importantly bifurcated or separated the testimony into a fact phase and an expert phase um and it wasn't even just uh a break in the middle of the same testimony where we turned to the expert phase we actually separated it by several witnesses who intervened um and and on different days of trial um so the court followed all the safeguards that are necessary under holguin um council now raises i think three instances on appeal where he says or where rivera says that the expert testimony or the the fact testimony bled into expert testimony a little bit um it it didn't those were proper lay testimony in each instance and i can go through those um the first two issues had to do with just the the background and qualifications of agent nearing we covered those at the outset of the fact testimony because they were relevant both to the fact testimony and the expert testimony and we didn't want to have cumulative testimony about qualifications that's the testimony just generally about his background and then also about confidential informants the confidential informant testimony was relevant foundation to both the expert testimony later but also to the fact testimony because as this court has recognized uh lay opinion can include and this is the perez case for example indicia of drug trafficking so agent nearing needed to explain to the jury that he's an experienced drug agent that he is familiar with the types of evidence he's going to see when he goes into a home that he's familiar with it for a variety of reasons he's done search warrants but he's also talked to people in the drug trade confidential informants and and so if you ask for example a question uh in the fact stage did you find any uh any items of evidentiary value in a particular room in the home the jury needs to have that foundational evidence that this is an experienced drug agent and so he has a basis to answer that question um it did not wrongly imply that uh that there was specific information from a confidential source that could use be used against rivera it was just foundational testimony and moreover the court dutifully instructed the jury not to consider any evidence outside the record emphasized the importance of not looking at any other sources because the jury had to make its determination based entirely on the evidence presented in the courtroom and that rules out any of the speculation that they're worried about frankly in any case in which you have government agents testifying um that they're conducting surveillance or executing a search warrant there could always be speculation that maybe the government had other evidence that's not being prevented but the court rightly instructs the jury not to consider that and just to consider the evidence presented in court um and so the specific testimony objected to didn't even bleed into into expert testimony during the fact phase the the third example actually is one that was that occurred on cross-examination cross-examination um defense counsel uh made a factual assertion about the bags being empty and agent nearing uh reasonably responded well they weren't exactly empty there were shards of meth in there and then and then said something about his experience but it was invited by defense counsel's question um so there's certainly not plain air um here because the safeguards were followed uh that's what this court's uh hold that's what this court's decision freeman teaches if the safeguards are followed there's no basis for for finding claim air plain air and there was there was no air at all this is even if it were preserved it's an abusive discretion standard because the court has um substantial deference in in making these fact bound uh judgments about whether testimony is proper lay opinion or not if the court has any further questions if i'd welcome them if not i would ask the court to affirm thank you very much thank you your honor we'll give you time for rebuttal thank you your honor so i'd like to start with the uh the jury instruction so at 5 er 862 is the instruction the jury was given concerning forfeiture and it does have the language about uh competing or facilitating the commission of a drug violation that language is not in the verdict form as my colleague noted but juries as this court and the supreme court's case law have presumed to follow uh jury instructions and in a ninth circuit case united states versus espin espino 892 f third 1048 uh there was a constitutional problem with the verdict form and the court relied on the jury instructions to sort of override what the jury what the verdict form said in this case the jury was told you can find this is forfeitable based on it the proceeds being used for sort of future commission of drug violations and so that in addition to the directly or indirectly language which is in the verdict form is a basis to distinguish the jury's finding from the finding that needs to happen here which is that it needs to be the direct proceeds of methamphetamine transactions if it's the indirect proceeds if it's perhaps some other drug or some like the third item that's the methods being traded for and then being sold or some other way in which the money is indirect proceeds that's not sufficient to support the enhancement in addition so the the judge did not uh base the uh the amount approximation on the jury's verdict the judge just acknowledged on the record as the prosecutor indicated uh you know well there is that but the only basis the the sentencing judge gave for the drug approximation was the the cash that is the money found in in the apartment and under gonzalez sanchez that is not sufficient um so in addition moving on to the uh the premises enhancement so the language of the enhancement says the purpose not a purpose the purpose so the purpose of the residents needs to be manufacturing or distribution of drugs uh the storage of large amounts of drugs may be relevant it being for distribution but we would contend that distribution means distribution at the premises and this is sort of underscored by the fact that this enhancement is based on a law passed by congress and borrows language from a law passed by congress the the purpose of which is to add additional penalties for people who maintain premises at which a lot of drug transactions occur or at which drugs are manufactured we would point this court to the seventh circuit's decision in craft which we discussed in our briefs in which you know there was evidence of multiple drug exchanges occurring at the residence there was evidence of the presence of drugs at the residence but that was found to be insufficient for yes oh i'm sorry oh that was found insufficient for it to be a purpose or the purpose i i mean of the residents that is it has to be not just you know a purpose it has to be the sort of the purpose someone can live at a residence that satisfies this enhancement but here you know the uh the the guidelines instruct us to look at all the lawful purposes to which it was put which include sort of living there sleeping there eating there etc uh moving on to the second amendment issue so it is clear from the face of the indictment that this court can decide our our argument because our argument is premised on the idea that the government can only prosecute ammunition if it is also prosecuting guns so in a situation where as in you know ghost guns by by hypothesis where the government lacks jurisdiction to prosecute the possession of a gun it cannot you know prosecute possession of an ammunition of ammunition because there's no tradition of regulating ammunition alone that could potentially be prosecuted in state court or some jurisdiction you've gone over um i've given you some leeway but i i think we have your arguments on this well thank you i wouldn't worry uh yeah thank you thank um thank you to both counsel for your arguments in the case and the case is now submitted and that concludes our arguments for the day all right guys
judges: GOULD, SMITH, NELSON